**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
Newport News Division

FILED

JUN 19 2012

C: [ ] S [ ] COURT

SHERYL MCCRAY,

Plaintiff,

v.                                                           ACTION NO. 4:12cv20

HUNTINGTON INGALLS INCORPORATED
(Newport News Shipbuilding Division),

Defendant.

## OPINION AND ORDER

This action is brought by *pro se* Plaintiff Sheryl McCray under Title VII of the Civil

Rights Act of 1964, 42 U.S.C. § 2000(e), et. seq. ("Title VII"), alleging discriminatory discharge

based on race and retaliation, against Plaintiff's former employer, Defendant Huntington Ingalls

Incorporated. Defendant has moved for Partial Judgment on the Pleadings, ECF No. 9, Plaintiff

has responded with a Motion to Deny Partial Judgment on the Pleadings,[1] ECF No. 14, and

Defendant has replied. ECF No. 15. Accordingly, both motions are ripe for judicial review. For

the reasons stated herein, Defendant's Motion for Partial Judgment on the Pleadings is

GRANTED, and Plaintiff's Motion to Deny is DENIED.

## I. FACTUAL BACKGROUND

On October 23, 2009, Sheryl McCray ("McCray") utilized her former employer

Huntington Ingalls' ("Huntington's") telephone complaint line to enter an anonymous report

regarding the workplace activities of her co-worker, Amy Madray ("Madray"). McCray reported

---

[1] For the purposes of this Opinion and Order, Plaintiff's Motion to Deny Partial Judgment on the Pleadings will be referred to as Plaintiff's Response ("Pl.'s Resp.").

that she had observed Madray utilizing company Internet access to conduct personal activities on a daily basis. McCray also reported that Madray often received a male visitor from another location during business hours for non-work related reasons, that Madray "act[ed] 'particular'" with a company vehicle that had been assigned for employee use, and that Madray had received an award for a program with which she had only limited involvement. ECF No. 3-3. McCray indicated that she did not make a report regarding Madray's activities to management because she feared retaliation. ECF No. 3.

McCray learned in June 2010 that Madray had been disciplined as a result of an investigation related to the allegations in the anonymous complaint and that Madray's supervisor, Mike Simmons ("Simmons"), was going to retaliate against whomever had entered the anonymous complaint. ECF No. 3-4. In July 2010, McCray informed her supervisor, Daryl Cyrus ("Cyrus"), of her concerns and declined relocation to another area. *Id.* Thereafter, in October of 2010, McCray learned from Cyrus that she was to be reassigned to work under Martin Walsh ("Walsh") in an area where Simmons also worked. *Id.* McCray also learned that Madray was to be reassigned to Walsh as well, at the direction of Simmons. *Id.* Additionally, other Huntington employees were being administratively reassigned to different departments at this time while physically remaining in the same locations. ECF No. 3-5.

When McCray began working in her new assignment, Simmons rarely communicated with her and assigned all of the work typically completed by McCray to Madray. ECF No. 3-4. At this time, McCray approached Cyrus and requested to work in another area but was denied. *Id.* McCray, Simmons, and Cyrus all met to discuss how McCray could assist Simmons, and Simmons indicated that he did not have a lot of work for McCray. *Id.* In November of 2010, McCray and at least one other minority employee were released from their duties. *Id.*

2

## II. PROCEDURAL HISTORY

McCray filed a complaint in this Court on February 13, 2012, seeking relief under Title VII. ECF No. 3. McCray alleges that she was improperly selected for termination based on her race as part of a reduction in force ("RIF") undertaken by her employer, Huntington Ingalls, *id.* at para. 2, subparas. 1-5, and that she suffered retaliation from her employer as a result of an anonymous "Open Line" complaint she made regarding her co-worker, Amy Madray. *Id.* at para. 2, subparas. 6-9.

In her complaint, McCray requests a finding by this Court that Huntington violated Title VII by (1) improperly terminating her employment based on race and (2) retaliating against her. *Id.* McCray seeks a judgment against Huntington for "back wages, front wages, all benefits, compensatory and/or punitive damages . . . [and] restoration to her position within another division." *Id.*

On April 12, 2012, Huntington filed an answer to McCray's complaint. ECF No. 6. Subsequently, on April 18, 2012, Huntington filed this Motion for Partial Judgment on the Pleadings that addresses McCray's retaliation claim. ECF No. 9 (addressing the retaliation claim found at ECF No. 3, para. 2, subparas. 6-9). Huntington argues that McCray did not state a prima facie claim of retaliation under Title VII, because she failed to show that she was engaged in protected activity. ECF No. 10. On May 1, 2012, the parties consented to the jurisdiction of a magistrate judge (ECF No. 13), and the Honorable Raymond A. Jackson reassigned the case to the undersigned Magistrate Judge on May 7, 2012. ECF No. 11.

On May 14, 2012, McCray filed a Response to Huntington's Motion for Partial Judgment on the Pleadings asserting, that she did engage in protected activity. ECF No. 14. McCray argues that she "report[ed] an unlawful practice to the company's internal reporting agency" and

that Huntington retaliated against her for reporting that practice. *Id.* On May 18, 2012, Huntington replied, arguing that, because McCray's report was a general complaint regarding a policy violation, and because her complaint did not contain a race or sex-based component, McCray was not engaged in protected activity. ECF No. 15.

## III. MOTION FOR JUDGMENT ON THE PLEADINGS – STANDARD OF REVIEW

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as the standard used in a Rule 12(b)(6) motion for failure to state a claim. *Independence News, Inc. v. City of Charlotte*, 568 F.3d 148, 154 (4th Cir. 2009); *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 405-06 (4th Cir. 2002); *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Therefore, in considering a motion for judgment on the pleadings, the Court accepts as true all well-pleaded allegations and views the complaint in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). The Court is not, however, required to accept as true any legal conclusions contained in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Federal Rule of Civil Procedure 8(a) requires that a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). The Supreme Court, in *Bell Atlantic Corp. v. Twombly*, held that a sufficient pleading "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Factual allegations, assumed to be true, "must be enough to raise a right to relief above the speculative level." *Id.* (citation omitted). The pleadings must state a claim "that is plausible on its face," rather than "conceivable." *Id.* at 570. "Where a complaint pleads facts that are 'merely

consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"" *Iqbal*, 556 U.S., at 678 (quoting *Twombly*, 550 U.S., at 557). A complaint must contain facts supporting all elements of a cause of action in order to be sufficient. *Iodice v. United States*, 289 F.3d 270, 281 (4th Cir. 2002); *see also Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *Dickson v. Microsoft Corp.*, 309 F.3d 193, 213 (4th Cir. 2002).

## IV. ANALYSIS

In its Motion for Partial Judgment on the Pleadings, Huntington argues that McCray's retaliation claim should be dismissed because her complaint fails to allege that she was engaged in protected activity. ECF No. 10. Title VII makes it unlawful for an employer to retaliate against their employees because they have engaged in opposition to an unlawful employment practice or because they have "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing" under Title VII. 42 U.S.C.A. § 2000e-3 (West); *see also Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). An unlawful employment practice is defined as follows:

> (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

§ 2000e-2.

In order for McCray to proceed on a Title VII retaliation claim, she must first establish a prima facie case of retaliation by a preponderance of the evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *Laughlin*, 149 F.3d at 258. A prima facie case of retaliation consists of three elements: "first, that she engaged in protected activity; second, that an adverse employment action was taken against her; and third, that there was a causal link between the protected activity and the adverse employment action." *Mackey v. Shalala*, 360 F.3d 463, 469 (4th Cir. 2004) (citing *Laughlin*, 149 F.3d at 258.).

Protected activity, as described in §2000e-3, can consist of either opposition to unlawful employment practices or participation in a Title VII investigation, proceeding, or hearing. In order to qualify as protected opposition activity, a complaining employee must be engaged in opposing an actual discriminatory practice of their employer within the prohibitions of Title VII, or a practice the employee reasonably believes is discriminatory. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005) ("We have recognized that section [2000e-3] protects activity in opposition not only to employment actions actually unlawful under Title VII but also employment actions an employee reasonably believes to be unlawful."); *see also Jordan v. Alternative Res. Corp.*, 458 F.3d 332, 339 (4th Cir. 2006) (quoting 42 U.S.C. § 2000e-2(a)(1) for the proposition that it contains "[t]he 'unlawful employment practices' that an employee can oppose, and thereby be protected from retaliation . . . ."). Determining whether an employee reasonably believed the opposed practice was discriminatory is an objective analysis. *Jordan*, 458 F.3d at 339.

Huntington argues that McCray failed to show she was engaged in protected activity. ECF No. 10. They contend that McCray's retaliation claim is based on her belief "that members of management believed she was the source of the complaint [against her co-worker] and held it

6

against her." *Id.* In Huntington's view, McCray's action of entering a complaint regarding her co-worker's computer misuse did not constitute participation or opposition activity within the meaning of § 2000e-3. *Id.* Additionally, Huntington argues based on the pleadings, that "not only does Plaintiff lack any objectively reasonable basis for believing her complaint was in opposition to an employment practices [sic] made unlawful by Title VII, she harbors no subjective belief on that count either." *Id.* In support of this argument, Huntington relies on McCray's statements during the EEOC process and her response to this motion. *Id.* ("My contention has never been that I lodged a complaint to the Hotline based on discrimination. I said that the complaint was based on Amy Madray's misconduct." (internal quotation marks omitted) (quoting EEO Rebuttal to Agency's Position, ECF No. 3-5)); ECF No. 15 ("The Plaintiff's Open Line complaint was not in reference to discrimination but she reported unlawful workplace practices ignored by management (fraud)." (quoting Pl.'s Resp., ECF No. 14)).

In response, McCray contends that she did engage in protected activity. ECF No. 14. McCray argues that "[s]he (Plaintiff) was selected [for termination] based on her race and for making a complaint." *Id.* McCray's position is that management "assumed that the complaint was made by the only minority in the office . . . that the person making the complaint was of a protected class." *Id.*

In order for McCray to sufficiently plead a claim under the retaliation provision of Title VII, McCray must first show she was engaged in protected activity. *Mackey* 360 F.3d at 469 (citing *Laughlin*, 149 F.3d at 258.). It is clear that McCray did not report her complaint against her co-worker, Amy Madray, in connection with any Title VII investigation, hearing, or other proceeding. ECF No. 14 ("The Plaintiff did report an unlawful practice to the company's internal reporting agency."). Thus, McCray's internal complaint does not fall under the

"participation prong" of Title VII. *See* § 2000e-3.

Similarly, it is clear that McCray was not engaged in opposing a Huntington employment practice that she reasonably believed to be, or in fact was, unlawful *under Title VII.* Title VII prohibits discrimination in employment based on "race, color, religion, sex, or national origin." § 2000e-2. McCray's complaint against Madray was essentially that she was misappropriating company resources. *See* Report of McCray's Complaint Against Madray, ECF No. 3-3. Nothing in McCray's complaint against Madray alleges anything connected to "race, color, religion, sex, or national origin," nor could any reasonable person believe that misappropriation of company resources through actions such as receiving visitors during work hours and utilizing company Internet access for personal activities is in any way connected to such protected classes. *Id.* In fact, McCray herself has admitted on two occasions that her complaint was not about discrimination, but about "Amy Madray's misconduct" and "unlawful workplace practices ignored by management (fraud)." ECF No. 10 (internal quotation marks omitted) (quoting EEO Rebuttal to Agency's Position, ECF No. 3-5)); ECF No. 15 (quoting Pl.'s Resp., ECF No. 14).

At its core, McCray's complaint against Madray is simply a complaint by an employee of another employee's misconduct in the performance of her job duties. Title VII is not a "general civility code," *Oncale v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998), nor is it "a general bad acts statute." *Bonds v. Leavitt*, 629 F.3d 369, 384 (4th Cir. 2011), cert. denied, 132 S. Ct. 398 (U.S. 2011). The purpose of Title VII is not to provide general workplace regulation, but to create a workplace environment free from discrimination. *See Ricci v. DeStefano*, 557 U.S. 557, 129 S. Ct. 2658, 2674 (2009); *McKennon v. Nashville Banner Pub. Co.*, 513 U.S. 352, 358, 361 (1995).

Thus, the Court finds that McCray has failed to plead sufficient facts to support that she

was engaged in protected activity for which she was terminated.  Therefore, McCray has failed

to state a prima facie case of retaliation under Title VII, and that portion of her complaint must

be dismissed.  ECF No. 3, para. 2, subparas. 6-9.

## IV. CONCLUSION

For the foregoing reasons, the Court GRANTS Huntington's Motion for Partial Judgment

on the Pleadings (ECF No. 9) and DISMISSES WITH PREJUDICE the retaliation claim of

McCray's complaint.

_____/s/_____
Tommy E. Miller
United States Magistrate Judge

_____
Tommy E. Miller
United States Magistrate Judge

Norfolk, Virginia
June _19_, 2012

9